```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                  DOC #:
SOUTHERN DISTRICT OF NEW YORK                 DATE FILED:  8-4-16
---------------------------------------------- X
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

LUIS PEGUERO,

              *Plaintiff,*        :     15-cv-2854 (PAC)

           *- against -*       :     **OPINION & ORDER**

UNITED STATES OF AMERICA,

              *Defendant.*     :
-------------------------------------------------------------- X

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Luis Peguero was charged with conspiring to distribute one kilogram or more of heroin pursuant to 23 U.S.C. §§ 841(a), 841(b)(1)(A)(i), and 846. Upon dismissal of those charges, Peguero claims the government: (1) deprived him of the rights and privileges and immunities guaranteed by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution; (2) subjected him to malicious prosecution, false arrest, and falsely imprisonment; and (3) negligently hired, retained, and trained three Drug Enforcement Administration (DEA) special agents. He seeks damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). The government moves to dismiss the complaint. The Court grants the motion.

## BACKGROUND

On September 6, 2006, DEA Agent Matthew Greimal arrested Jennifer Filpo and Catherine Sanchez for their involvement in a heroin-processing mill located in Newark, New Jersey. Am. Compl. ¶ 20. Sanchez became a cooperator and informed Agent Greimal that she accompanied Hassan Gatling, a drug dealer, to Tony's Boutique on three occasions, where Gatling acquired a plastic bag containing a kilogram of heroin. *Id.* at ¶ 23. DEA agents surveilled Tony's Boutique

1

the same day and observed several people on cellphones entering and exiting the location, including a man named Paulino Ulloa. *Id.* at ¶ 26–27. When Ulloa exited Tony's Boutique with a plastic bag, the agents questioned him and learned that the bag contained approximately eight cellphones soon to be sold in the Dominican Republic. *Id.* at ¶ 27. The agents then asked Ulloa and the driver of his vehicle to accompany them into Tony's Boutique. *Id.* at ¶ 28.

Inside, the agents spoke to Jennifer Grullon, the store manager, and searched the premises. *Id.* Peguero alleges that the agents threatened Grullon to induce her to permit them to search the store. *Id.* at ¶ 29. The agents found documents indicating that Peguero owned Tony's Boutique, a money counter, a digital scale, a bottle of Manitol (a suspected cutting agent), a ledger, and $1,000 in cash. *Id.* at ¶¶ 28, 30. None of these items were in plain view. *Id.* at ¶ 30. No weapons or drugs were found. *Id.* The agents arrested Peguero when he entered the boutique. *Id.* at ¶ 31.

On September 7, 2006, the Acting U.S. Attorney for the District of New Jersey charged Peguero with conspiring to distribute one kilogram or more of heroin. *Id.* at ¶ 6. The next day, Peguero was "formally arrested" and confined until November 22, 2006, when he was released to serve a two-year term of home confinement. *Id.* He complied with the conditions of his home-confinement order, and the criminal complaint was dismissed on October 8, 2009. *Id.*

On October 6, 2011, Peguero filed an administrative claim with the Department of Justice for claims arising out of his arrest and confinement. *Id.* at ¶ 8. Peguero received a final denial of that claim on October 29, 2014. *Id.* Peguero filed this action on April 14, 2015.

## DISCUSSION

### I. Applicable Law

The United States is immune from civil suit unless it waives its sovereign immunity. *See Price v. United States*, 174 U.S. 373, 375–76 (1899) ("[T]he government is not liable to suit unless

2

it consents thereto, and its liability in suit cannot be extended beyond the plain language of the statute authorizing it."). The FTCA provides a limited waiver of sovereign immunity that permits citizens to raise claims for torts committed by persons acting on behalf of the United States, permitting

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.

28 U.S.C. § 1346(b)(1). Such claims are limited, however, to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* Constitutional claims are not cognizable under the FTCA because private persons are not liable under state law for federal constitutional violations. *See F.D.I.C. v. Meyer* 510 U.S. 471, 478 (1994) (stating that "federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."). Instead, such claims may be raised against individual federal agents under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

The FTCA includes an exception to its waiver of sovereign immunity for "discretionary function[s]." 28 U.S.C. § 2680(a) (barring "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused"). This exception applies where (1) the government action in question "involve[s] an element of judgment or choice and [is] not compelled by statute or regulation," and (2) the "judgment or choice [is] grounded in considerations of public policy or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citations and internal quotation marks omitted).

3

## II. Analysis

### a. Constitutional Violations

Peguero claims that his arrest and confinement violated his rights under a bevy of constitutional provisions, including the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. He argues that the FTCA waives the government's sovereign immunity for such constitutional torts. He is mistaken. The FTCA permits suits against the government only when a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The "place" in question here is the State of New Jersey. *See Meyer*, 510 U.S. at 478. But Peguero points to no state law that imposes individual liability for federal constitutional violations. Rather, "federal law, not state law, provides the source of liability for [his] claim[s] alleging the deprivation of [his] federal constitutional right[s]." *Id.*; *see, e.g.*, *Bivens*, 403 U.S. at 395–96 (recognizing an implied cause of action against individual federal actors for violations of the Fourth Amendment that result in damages); 42 U.S.C. § 1983 (creating a cause of action against individual state actors for constitutional violations that result in damages). Accordingly, the FTCA does not waive the government's sovereign immunity with respect to Peguero's constitutional claims.[1] The claims are dismissed.

### b. Negligent Hiring, Retention, and Training of the DEA Agents

Peguero claims the government negligently hired, trained, and retained the DEA agents who arrested him. But actions with respect to an agency's hiring, training, and retention are quintessential discretionary activities that fall under the discretionary-function exception. *See Li v. Aponte*, No. 05 Civ. 6237 (NRB), 2008 WL 4308127, at *1 (S.D.N.Y Sept. 16, 2008) (stating that

---

[1] Peguero's constitutional tort claims are also defective under *Bivens* because the Amended Complaint names only the government, not individual federal agents, as a defendant. Peguero has not requested leave to amend the complaint to state a *Bivens* claim or add individual defendants.

4

"common law claims against the United States for negligent hiring, training and supervision are barred by the 'discretionary function' exception of the FTCA."); *Saint-Guillen v. United States*, 657 F. Supp. 2d 376, 386 (E.D.N.Y. 2009) (noting that "[t]he Discretionary Function Exception bars plaintiffs' claims for negligent hiring, training, retention, and supervision of defendant's employees."). Peguero baldly asserts that the DEA agents' actions "were made pursuant to mandatory federal statutes, regulations and policy" and that there was "no room for discretion," but he points to no specific statute, regulation, or policy. Pl. Opp'n 9–10. The claim is dismissed.

### c. False-Arrest and False-Imprisonment Claims

Peguero claims he was falsely arrested on September 8, 2006, and falsely imprisoned from that time until October 8, 2009. He argues he timely filed his false-arrest and false-imprisonment claims because New York State law, rather than federal law, governs the accrual date. Am. Compl. ¶¶ 95–99. Under the FTCA, however, federal law governs the accrual date, whereas state law governs substantive claims. *See A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139 (2d Cir. 2011) ("Federal law determines the date that an FTCA claim accrues."). Under federal law, false-arrest claims accrue when plaintiff "becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007); *see also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (holding that "[a] cause of action for false arrest accrues at the time of detention."). Similarly, false-imprisonment claims accrue when the imprisonment ends; namely, when the plaintiff is detained pursuant to legal process. *Wallace v. Kato*, 549 U.S. 384, 384 (2007) (stating that, "For false imprisonment and its subspecies false arrest, . . . the statute of limitations begins to run when the alleged false imprisonment ends, that is, . . . when the victim becomes held pursuant to legal process."). Such claims must be filed within two years of accrual, or they are "forever barred." 28 U.S.C. § 2401(b). Assuming Peguero was arraigned on or shortly after September 8, 2006, the date he alleges he was "formally arrested," Am. Compl. ¶ 6, his false-arrest and false-imprisonment claims

5

expired two years later in September 2008.[2] He did not file his claims until October 6, 2011, over five years after he became subject to formal legal process. The claims are time-barred.

Peguero argues alternatively that his FTCA claims are subject to equitable tolling because the two-year period of home confinement prevented him from complying with the statute of limitations. The statute of limitations period for false-arrest and false-imprisonment claims, however, continues to run regardless of an ongoing and related criminal prosecution. *Wallace*, 549 U.S. at 347. Consequently, Peguero's incarceration pending criminal prosecution is insufficient to justify the "extraordinary" relief of equitable tolling. *See Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 443–44 (S.D.N.Y. 2006) ("[I]ncarceration, in itself, does not rise to the level of the rare and exceptional circumstances that would move the Court to toll the statute of limitations." (internal quotation marks omitted)). The claims are dismissed.

### d. Malicious Prosecution

Peguero claims he was maliciously prosecuted because the government initiated the criminal proceeding with malice and without probable cause. But Peguero does not dispute his accomplices' statements to the DEA agents about his drug activity, the observation of numerous individuals entering and exiting Tony's Boutique on cellphones, and the identification of a person in possession of a bag containing eight cellphones. Am. Compl. ¶¶ 23, 27 These facts alone establish probable cause to believe that Peguero was involved in drug activity at Tony's Boutique. Peguero's claim that the accomplices, "who were facing criminal charges for sale and possession of drugs," Am. Comp. ¶ 63, had not personally observed him engage in criminal activity, Pl. Opp'n at 17, is insufficient to prove that the DEA agents "knowingly act[ed] without probable cause . . . or pri-

---

[2] In any case, Peguero alleges that he was released on November 22, 2006, to serve a two-year term of home confinement. Am. Compl. ¶ 6. Accordingly, he was subject to legal process—at the very latest—by this date.

6

marily for a purpose other than securing the proper adjudication of the claim in which the proceedings are based." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1197 (3d Cir. 1993). The claim is dismissed.

### e. Plaintiff's Request to Further Amend the Complaint

Peguero requests leave to amend his complaint a second time to add facts regarding the allegedly improper search. *Id.* at 23–24. But Peguero does not identify those facts or suggest how they would salvage his claim. The Amended Complaint already concedes facts proving that the government had sufficient evidence beyond that obtained in the search to support a finding of probable cause. Further amendment of the complaint is thus futile. The request for leave to amend is denied.

### CONCLUSION

The Court GRANTS the government's motion to dismiss with prejudice. The Clerk of Court is directed to terminate Case No. 15 Civ. 2854.

Dated: New York, New York         SO ORDERED
August 4, 2016

PAUL A. CROTTY
United States District Judge

7